# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JAMES PRESTON RILEY,**

    **Plaintiff,**

v.                                                                  **Civil Action No. 1:08cv110**
                                                                             **(Judge Keeley)**

**GEORGE TRENT, RYON P. FULTON,**
**WILLIAM GASKINS, THOMAS MCCRAY,**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Factual and Procedural History

On April 29, 2008, the *pro se* plaintiff filed a civil rights complaint against the above-named defendants. In the complaint, the plaintiff asserts a claim of excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. On June 4, 2008, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not warranted at that time. Accordingly, the Clerk was directed to issue summonses and service of process was ordered through the United States Marshal Service.

On July 2, 2008, the defendants filed a Motion to Dismiss, or for Summary Judgment, and a Memorandum in Support. In the motion, the defendants assert, among other things, that the complaint is due to be dismissed for the failure to exhaust administrative remedies. Because the plaintiff is proceeding *pro se*, on July 3, 2008, the Court issued a <u>Roseboro</u> Notice advising the plaintiff of his right to file a response to the defendants' motion.

On July 31, 2008, the plaintiff filed a response to the defendants' motion, a renewed motion

to appoint counsel, a motion to amend and a motion for the production of documents. Because the plaintiff's response provided some information to contradict the defendants contention that the issue was not exhausted, on September 29, 2008, the undersigned directed the parties to file supplemental briefing on the issue. The plaintiff filed his supplemental brief on October 29, 2008, and the defendants filed a supplemental brief the next day.

This case is before the Court for a report and recommendation on the pending motions.

## II.  Standard of Review

**A.  Motion to Dismiss**

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

### III. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general

3

circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. However, that decision does not abrogate the fact that an action under 42 U.S.C. § 1983 is subject to exhaustion of administrative remedies as required by the PLRA.

The West Virginia Regional Jail Authority makes available to its inmates a grievance procedure through which they may seek review of complaints related to the conditions of their confinement. Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject

---

[1] Porter v. Nussle, 534 U.S. 516, 524 (2002).

the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

In the complaint, the plaintiff contends that he exhausted all available remedies. However, the plaintiff asserts that copies of the grievances he filed were destroyed by various corrections officers. Thus, the plaintiff implies that he is unable to provide proof of exhaustion.

In their motion to dismiss, the defendants contend that the plaintiff has not exhausted all available administrative remedies and request dismissal of the complaint for that reason. Attached to the motion is the Affidavit of Henry R. Robinson, Jr., the Deputy Chief of Operations for the West Virginia Regional Jail and Correctional Facility Authority, in which he asserts that the plaintiff did not file an appeal to the Executive Director. Dckt. 20 at Ex. 1.

In his response to the defendants' motion, the plaintiff asserts that he attempted to exhaust his administrative remedies, but that the jail administrator never responded to his grievances. Thus, the plaintiff sent a letter to Mr. Robinson, the Deputy Chief of Operations. The plaintiff then provides the Court with a copy of a letter from Mr. Robinson stating that Mr. Robinson received the plaintiff's letter and that he was forwarding said letter to the Jail Administrator for response. Apparently, the plaintiff received no further response. Consequently, the plaintiff asserts that he attempted to exhaust his administrative remedies and his complaint should not be dismissed.

Because the issue of exhaustion was not clear from the pleadings, on September 29, 2008, the undersigned directed the parties to file supplemental briefing on the issue. In that Order, the parties were also directed to file copies of any and all administrative grievances, and any responses thereto, as available, that had been filed with respect to the matter at hand.

On October 29, 2008, the plaintiff re-filed[2] copies of the administrative remedies which were available to him, but did not submit a written explanation of how those documents establish that his

---

[2] The plaintiff already filed copies of his available remedies with the complaint.

administrative remedies have been exhausted.

On October 30, 2008, the defendants filed a written brief outlining the procedural history with respect to the plaintiff's attempt to exhaust the matter raised in this case. Specifically, the defendants assert that the Jail Administrator, George Trent, found out about the plaintiff's excessive force claim on May 4, 2006, when contacted by the plaintiff's attorney. Dckt. 35 at Ex. 1. Moreover, Mr. Trent asserts that on June 29, 2008, he received paperwork regarding the matter from Henry Robinson, the Deputy Chief of Operations. Id. Mr. Trent further asserts that he received copies of other letters regarding the matter on August 8, September 26, and October 2, 2006. Id. Mr. Trent asserts, however, that he never received an inmate grievance from the plaintiff. Id. Interestingly, the Court notes that Mr. Trent does not assert that he conducted any investigation into the matter, or responded to any of the plaintiff's complaints.

Contrary to Mr. Trent's assertions in his affidavit, however, in their brief, the defendants assert that the one of the plaintiff's grievances, if liberally interpreted, could be construed as raising the subject matter of his case. Supplemental Brief (dckt. 35) at 2. Nonetheless, the defendants do not specifically refer to any of the attached grievances and the Court is unable to determine to which grievance the defendants are referring. Nevertheless, accepting the defendants' concession as true, the defendants also assert that although that grievance was appealed to the Chief of Operations, it was never appealed to the Executive Director. This fact is undisputed by the plaintiff.

Accordingly, assuming for purposes of this motion, that the plaintiff did initiate the grievance procedure with regard to the matter at hand, it is undisputed that the plaintiff never filed any grievance request or appeal to the Executive Director, the final step in the exhaustion process. Thus, since the plaintiff has not availed himself of the entire administrative remedy process, or in the

alternative, has never properly completed the administrative remedy process with regard to this issue, the plaintiff has failed to exhaust his administrative remedies.

Moreover, to the extent that the plaintiff asserts that the Administrator never replied to any of his grievances, such failure on the part of the Jail Administrator does not exempt the plaintiff from the exhaustion requirements. Even when no response is forthcoming, the Regional Jail's exhaustion procedures contemplate moving to the next level. It is clear that the plaintiff simply gave up when he did not receive a response to his requests. This, however, is not sufficient to complete exhaustion.[3]

### IV. Recommendation

For the reasons set forth in this Opinion, the undersigned recommends that the defendants' Motion to Dismiss, or for Summary Judgment (dckt. 20), be **GRANTED to the extent** it seeks dismissal of the complaint for failure to exhaust and the plaintiff's complaint (dckt. 1) be **DISMISSED without prejudice** from the active docket of this Court. In light of this recommendation, the undersigned further recommends that the plaintiff's Renewed Motion to

---

[3] Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms). To the extent, therefore, that exhaustion may be waived, the plaintiff has failed to set forth any accepted reason to excuse his failure to exhaust.

Appoint Counsel (dckt. 25), Motion to Amend Complaint (dckt. 26)[4] and Motion for Production of Documents (dckt. 27), be **DENIED as moot**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: December 23, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

[4] In his Motion to Amend, the plaintiff merely seeks to clarify that he has sued the defendants in both their individual and official capacities and that his claim arises under the Eighth Amendment to the United States Constitution. Furthermore, the plaintiff seeks to correct the spelling of one of the defendants names and to add the defendants' insurance company as a defendant in this action. None of these issues, however, affect the Court's determination as to exhaustion, nor do any of these issues change the substantive finding that the plaintiff's complaint is not exhausted.